BOWEN, Presiding Judge.
Gerald Wayne Airhart was indicted and convicted for theft of property in the first degree. Alabama Code 1975, § 13A-8-3. He was sentenced as an habitual offender to 23 years’ imprisonment. Four issues are raised on appeal.
I
There was no fatal variance between an indictment alleging the theft of “lawful currency” and the evidence showing the embezzlement of several checks. This same issue was answered in Farley v. State, 437 So.2d 639, 640-42 (Ala.Cr.App.1983). Compare with Airhart v. State, 388 So.2d 211 (Ala.Cr.App.1979), cert. quashed, 388 So.2d 213 (Ala.1980).
II
Although Airhart presented no witnesses in his behalf at trial, he attempted to establish, through the cross examination of H. Douglas Banks, that he was buying the business and, as owner, would not be stealing from himself. Mr. Banks was the owner of Banks Kitchen Center. Airhart was employed as a commissioned salesman and also received a small salary for keeping the company’s books.
The State’s evidence established that on January 7, 1982, Airhart opened a bank account for Banks Kitchen Center. Banks never authorized Airhart to open this separate account for his business. Airhart deposited checks received from customers of the Kitchen Center into the account and later withdrew all the funds. The evidence shows that customers of the Kitchen Center gave Airhart checks for cabinets and services on February 25, 1982 ($820.22), March 11th ($430 cash), 12th (“around” $600), and March 15, 1982 ($565.64). These sums were deposited into the unauthorized account and subsequently withdrawn. Banks never received any portion of these funds.
Somewhere around March 15th or 16th, Banks and Airhart “came to some agreement that he [Airhart] could buy the. company if certain criteria were met.” The criterion was that the sale would be approved by Jim Bishop Cabinets, Banks’ largest supplier and biggest creditor. That approval was never had and the business was never sold.
Banks testified that in connection with the sale of his business he did sign “an amortization of the payments that would be made and an authorization to have the utilities changed” to Airhart’s name. Banks stated he never received any installment payment from Airhart and never sold his business.
At trial, Airhart attempted to introduce the amortization schedule allegedly showing that four installment payments were made in March of 1982 to show “the intent of the parties.”
The trial judge properly refused to admit the amortization schedule into evidence because the evidence clearly shows that the contemplated sale was never formalized or consummated. Airhart never purchased the business and never had any legal or rightful claim to the proceeds of the business other than his salary and sales commission. In fact, Banks testified to the effect that the first conversation about selling the business was after he discovered that there were insufficient funds in the company’s true banking account Additionally, the reason why Banks was going to sell was because “(i)t was just really difficult to make any money.”
In a larceny or theft prosecution, the accused may “put in evidence any fact which legitimately tends to disprove a felonious intent, as by showing a taking ... under a bona fide claim of right.” 52A *978 C.J.S. Larceny § 121 (1968). See also Reed v. State, 32 Ala.App. 338, 340, 27 So.2d 22 (1945), cert. denied, 248 Ala. 196, 27 So.2d 25 (1946). “However, evidence as to a misapprehension of the meaning of a duly executed unambiguous instrument conveying the property is inadmissible. * * Evidence of the relations which existed between accused and the owner of the property alleged to have been stolen and the course of dealings between them is admissible on the issue of intent.” 52A C.J.S. Larceny at § 121.
Here, the fact that the business from which the funds were embezzled or stolen was going to be sold to the defendant does not legitimately tend to disprove the felonious intent of the defendant where the sale was not completed at the time the funds were taken, and the defendant had no claim of right to the stolen funds. Even if the amortization schedule had been admitted it would not have provided the accused with any justification or excuse for stealing the cash or checks from the customers of Banks Kitchen.
Ill
Airhart argues that the State’s evidence was insufficient to show that he “did knowingly obtain or exert unauthorized control over Three Thousand Nine Hundred Thirteen Dollars and Fourteen cents ... the property of H. Douglas Banks, with the intent to deprive the owner of said property” as charged in the indictment.
Theft of property in the first degree involves the theft of property which exceeds $1,000 in value. Alabama Code 1975, § 13A-8-3. The State’s evidence shows that Airhart received approximately $2,415.86 in cash or checks between February 25 and March 15, 1982. The evidence showed that Airhart opened an account for Banks Kitchen Center on January 7, 1982, that Banks did not authorize and knew nothing about this account, and that Air-hart was the only one who had the authority to withdraw funds from that account. The check for $565.64 was deposited on March 16th and the check for $679.46 was deposited on March 12th.
Banks testified that the $114.99 Airhart used to open the false account was in fact his money that was supposed to be deposited in the true Banks Kitchen account. Banks stated that the checks for $679.46, $820.22, $430 (cash), and $565.64 were never deposited to his account and that he never received any such amounts.
Banks testified that he confronted Air-hart:
“[I] told him what I’d learned, that he had been embezzling my money.... And he admitted to me that this business had been going on, not of any facts and figures, but that he had done me wrong.”
* * * * « *
“Well, I put the question to him that you had this account and you were using my money, it wasn’t yours to use. And first there was a blank look with no response. And then I pursued it and said you did this, didn’t you, and he said yes. And then another lack of response, and he says I’ve got a problem, I need help.”
In a prosecution for theft in the first degree, the evidence need not establish that the accused stole the exact amount described in the indictment so long as the amount which is proven exceeds $1,000. Green v. State, 377 So.2d 4, 7 (Ala.Cr.App.1979).
The evidence presented at trial presented a prima facie case of theft of property in the first degree. The elements of “unauthorized control” and “intent to deprive” were properly submitted to the jury for their consideration. Deep v. State, 414 So.2d 141, 145 (Ala.Cr.App.1982).
IV
Airhart alleges that the trial judge was biased and prejudiced. A review of the record dispels this contention.
Airhart pled guilty in 1980 to embezzlement. As part of the plea bargain agreement, two other embezzlement cases against him were nol prossed. Airhart was *979 given an early release from the penitentiary while serving time for the embezzlement so that he could go to work for Banks. Banks assisted Airhart in getting the early release and Airhart repaid him by stealing from him and driving him out of business. Between 1973 and 1975, Airhart had five misdemeanor convictions for issuing worthless checks.
In sentencing Airhart, the trial judge expressed his disgust for white collar crime. He noted that Airhart was given a break and abused it: “And yet here’s a man that was ... let out early, ... And someone gives him a break, gives him a job in a responsible position, and what happens? He doesn’t even think about it. He starts stealing like he’s going out of style.”
With a minimum sentence of 10 years and a maximum of 99, the trial judge sentenced Airhart to 23 years’ imprisonment.
The fact that this same trial judge had been the trial judge in an embezzlement case against Airhart which had been reversed on appeal furnishes no ground of bias or prejudice. Murphy v. State, 403 So.2d 314, 316 (Ala.Cr.App.), cert. denied, Ex parte Murphy, 403 So.2d 316 (Ala.1981). “A judge’s participation in the trial of a defendant for another crime does not, without more, furnish a basis for his recu-sal.” Messelt v. State, 351 So.2d 640, 641 (Ala.Cr.App.), cert. denied, 351 So.2d 642 (Ala.1977). See also Nelson v. State, 405 So.2d 392, 396 (Ala.Cr.App.1980), reversed on other grounds, 405 So.2d 401 (Ala.1981).
We find no cause for criticism in the judge’s conduct and remarks. See generally Oglen v. State, 440 So.2d 1172 (Ala.Cr.App.), cert. denied, Ex parte Oglen, 440 So.2d 1177 (Ala.1983). The record fully supports his indignation over Airhart’s conduct. Considering Airhart’s criminal record and the nature of the present offense, the sentence of 23 years displays more mercy than prejudice or bias against the defendant.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.