The appellant, William C. Delevie, appeals his conviction for theft of property in the first degree, a violation of §13A-8-3, Code of Alabama 1975. He was sentenced to life imprisonment pursuant to the Alabama Habitual Felony Offender Act.
The appellant argues that the trial court erred in denying his motion for a judgment of acquittal on the grounds that a fatal variance existed between the indictment and the proof presented at trial. Specifically, he argues that the indictment was defective because it charged him with theft of currency by deception when the evidence at trial proved that he was guilty of theft of a check by deception.
The indictment read as follows:
 "WILLIAM CHARLES DELEVIE, whose name to the Grand Jury is otherwise unknown than as stated, did knowingly obtain, by deception, control over $2,550.00, lawful currency of the United States of America, and of said value, the property of Brenda D. Morgan, with the intent to deprive the owner of said property, in violation of Section 13A-8-3 of the Code of Alabama." *Page 1284 
The evidence presented by the State tended to show the following: Norman Morgan contacted the appellant, who was in the automobile body repair business, about purchasing a used truck. The appellant told him that he knew of a good used truck for sale in Tennessee. Morgan testified that he traveled to Tennessee and spoke with Danny Brown, the owner of B M Auto Sales. He testified that, after returning home, he decided to purchase the truck for the agreed upon price of $2,550. Morgan testified that his wife, Brenda Morgan, had a cashier's check drawn in the amount of $2,550 and made payable to B M Motors. Morgan testified that he asked the appellant to deliver the check to the owner of B M Auto Sales and to then take the truck back to his shop for repairs. The appellant, however, cashed the cashier's check at First Alabama Bank by representing that he was "Bill" of B M Motors. He kept the money, thus misrepresenting to the bank that he was the lawful owner of the cashier's check. Morgan testified that he became suspicious when the appellant refused to go to Tennessee to pick up the truck. He testified that, when he attempted to stop payment on the check, he discovered that it had been cashed by the appellant. He testified that, when he contacted the appellant, the appellant told him that someone had stolen the check from his desk. Morgan testified that he had not given the appellant any authority to cash the check. He testified that he never recovered the money.
Deborah Snead, the head teller at First Alabama Bank, testified that the appellant presented a cashier's check for $2,550 made payable to B M Motors. She testified that the appellant told her that he did not have a business account at First Alabama Bank, but that he was "Bill" of B M Auto Sales. She stated that the explanation seemed reasonable to her because the appellant was in the automotive business. She testified that when she later learned that a stop payment order had been placed on the check she, along with another employee of the bank, went to the appellant's place of business. She testified that the appellant informed her that "he and Morgan had already worked it out." She testified that the appellant again told her, "I'm Bill and this is my son, Mike, and we are B M Auto Sales."
 "A fatal variance exists between an indictment alleging the theft of 'lawful currency' and evidence showing the theft of several checks. '[W]hen in this case the charge involved "currency" and the evidence established "checks," this was a fatal variance.' Ex parte Airhart, 477 So.2d 979, 980-81 (Ala. 1985); Airhart v. State, 388 So.2d 211, 212-13 (Ala.Cr.App.), cert. quashed, 388 So.2d 213 (Ala. 1980) (proof that a check was embezzled is insufficient to satisfy the allegation of an indictment charging the embezzlement of 'lawful currency').
 " 'Such a variance in allegation and proof is fatal and could have easily been avoided by a simple use of the disjunctive "money or checks" in the indictment. Evans v. State, 343 So.2d 557
(Ala.Cr.App. 1977). In so ruling we make no new announcement concerning variance in proof and allegation, nor do we impose a standard of technicalities void of logic and necessity. Our decision today simply reaffirms long standing principles enunciated by well reasoned authority. Because of the deficiency herein pointed out we have no alternative but to reverse and remand this cause.' Airhart, 388 So.2d at 213.
". . . .
 "The proper form for an indictment for theft by deception under § 13A-8-3 is found in the Indictment and Warrant Manual prepared by the Alabama Law Institute and the Alabama Office of Prosecution Services at pp. 8-1 and 8-1(a). Although there are two alternative forms provided for a charge of theft by deception, each of those alternatives begins, 'A.B. did knowingly obtain, by deception, control over (description of property), . . .' Every indictment form for theft of property contains the same '(description of property)' requirement. *Page 1285 
 " 'Obviously, a check is not money,' and in an indictment, an allegation of conversion of money will not cover a conversion of a check. Carr v. State, 104 Ala. 43, 16 So. 155, 160 (1894). See also United States v. Fernando, 745 F.2d 1328, 1330
(10th Cir. 1984) ('[S]tate courts have interpreted "money" . . . as not including checks.'). 'The word "dollars" imparts to the common understanding, the meaning of a thing of value,' and the indictment must 'designate the kind of dollars stolen.' Leonard v. State, 115 Ala. 80, 22 So. 564, 565
(1897). 'A check is a written order, or request, for the payment of money, addressed to a bank or banker.' Thompson v. State, 49 Ala. 16, 18 (1873). 'A check is essentially commercial paper, possessing the attributes of a contract, and certain characteristics of property, and it is equivalent to a promise to pay upon the part of the drawer. It is executory in its nature.' Scott v. State, 33 Ala. App. 328, 330, 33 So.2d 390 (1948). 'A check is a contract.' Gooch v. State, 249 Ala. 477, 479, 31 So.2d 776 (1947).
". . . .
 "It is fundamental that an indictment 'must state the facts constituting the offense in ordinary and concise language, . . . in such a manner as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.' Alabama Code 1975, § 15-8-25. 'Indictments cannot be aided by intendment, but must positively and explicitly state what the prisoner is called upon to answer.' State v. Seay, 3 Stew. 123, 130-31 (Ala. 1830)."
Shubert v. State, 488 So.2d 44, 46-47 (Ala.Cr.App. 1986); See also Henderson v. State, 520 So.2d 169 (Ala.Cr.App. 1987).
Here, there was a fatal variance between the indictment alleging that the appellant stole $2,550 currency and the proof of a theft of a check for that amount. Stated differently, the evidence presented at trial tended to show that the appellant exerted unauthorized control over a check rather than currency as alleged in the indictment.
Because the variance between the indictment and the proof was material, the judgment of the circuit court is reversed and this cause remanded to that court with instructions to order a new trial. Because we are reversing on this issue, we pretermit discussion of other allegations of error.
REVERSED AND REMANDED.
All judges concur.